**Bessie BURKS, Plaintiff-Appellant,**

v.

**Fon Edward WILSON, Jr., Defendant-Respondent.**

No. 7966.

Springfield Court of Appeals.

Missouri.

April 2, 1962.

Karl Blanchard, Seiler, Blanchard & Van Fleet, Joplin, for appellant.

Rex Titus, Richart, Titus & Martin, Joplin, for respondent.

McDOWELL, Judge.

This appeal is by plaintiff from an adverse judgment in her action for damages resulting from an automobile collision.

Plaintiff's petition is in two counts. In the first count she seeks damages for personal injuries in the sum of $10,000.00 and, in the second count, for $200.00 damages to her car. As grounds for recovery she relies upon both primary and humanitarian negligence.

Defendant filed answer and counterclaim. The answer is a general denial of the allegations in plaintiff's petition. In the counterclaim he seeks to recover damages in the sum of $25,000.00, alleging both primary and humanitarian negligence on the part of plaintiff as basis for recovery.

The cause was tried by jury resulting in a verdict and judgment for defendant and against plaintiff on plaintiff's petition and for plaintiff and against defendant on defendant's counterclaim. From this judgment plaintiff perfected her appeal.

The facts produced in evidence show that the collision between plaintiff's 1953 Chevrolet automobile and defendant's Austin-Healey Sprite occurred about 1:00 P.M., October 30, 1959, at the intersection of Seventh and Illinois streets in Joplin, Mis-

souri, both drivers were alone in their respective cars.

Seventh street is 60 feet wide, runs east and west, divided into four lanes for moving traffic with a parking lane on each side and is one of the busiest streets in Joplin. Illinois street (also referred to as Murphy Boulevard) is a black top street, 40 feet wide and runs north and south.

Located at the southeast corner of the intersection, running north and south along the east side of Illinois street is a retaining wall. The north end of this wall is 23 feet south of the south curb line of Seventh street and approximately six inches high at the north end and gets higher as it proceeds south. At the time of the accident a used car lot was located east of the retaining wall and south of the sidewalk running along the south side of Seventh street. Between the south curb line of Seventh street and the sidewalk was a grass parkway. The testimony was that this used car lot had cars parked along the east side of Illinois street south of the intersection and along the south side of Seventh street.

At a point 25 feet south of the south curb line of Seventh street a driver of an automobile on Illinois street has an unobstructed view to the east along Seventh street eight or nine blocks.

The intersection, at the time of the accident, was controlled by an electric traffic signal suspended over the center, which was in operation. The complete light cycle was 49 seconds. It was red for north-south traffic on Illinois street for 27 seconds, green for 20 seconds, and on amber for 2 seconds, which overlapped with the green. The cycle was just the reverse for east-west traffic on Seventh street.

Plaintiff testified that at the time of the collision it was real cloudy, gray, but the pavement was dry. The investigating officer testified that he arrived at the scene some eight minutes after the accident and the pavement was wet.

Plaintiff was westbound on Seventh street, driving in the inside lane, immedi-ately north of the center line and defendant was northbound on Illinois street with his left wheels east of the center line of that street.

It was plaintiff's testimony that as she approached the intersection there was a car immediately ahead of her; that she was driving at a speed of about 30 miles an hour and slowed down as she neared the intersection; that she observed the traffic light was green on Seventh street and also observed defendant's automobile approaching the intersection from the south. She stated: "Yes, I did; some distance, but I don't know just how far down the street". She testified that defendant's car was coming up the street when she first saw it. She gave this evidence:

"Q. Now then, as you neared or reached the intersection, did you look at the light any more? A. Yes, I did. The car just ahead of me went through and so I looked at the south again to see if that car had stopped, and I looked to the north, and there wasn't anything that way, and then I looked at the light, and it was still green, and so I proceeded across".

Her testimony was that just before she entered the intersection she thought defendant's car had stopped and she entered at a speed of 20 to 25 miles per hour, or possibly 25 to 30 miles per hour; that the rear of her car was about at the center of the intersection when the left rear end was struck by the front of defendant's automobile; that at a speed of 25 miles per hour, under the existing conditions, she could have stopped her car in possibly three car lengths after she got her foot on the brake. Her car was 16 feet long. She stated that the front end of her car was west of the center of Seventh street.

On cross examination plaintiff testified that when she first looked at the light she was possibly half a block east from the intersection and the last time she looked was just before she entered.

In her deposition she testified that she didn't remember whether she had looked at

the traffic light at any time before she was two car lengths east of the east edge of the intersection; that the first time she looked at the light she was about a car length back of the other car which was right at the east edge of the intersection.

Defendant's evidence was that he approached the intersection of Illinois and Seventh streets at a speed of about 30 miles per hour; that he reduced his speed to 20 to 25 miles per hour as he entered the intersection and was driving about 20 miles per hour at the time of impact; that the traffic light was green on Illinois street when he was 300 to 350 feet south of the intersection; that he last looked at the light when he was 50 to 60 feet south of the intersection and it was still green; that he did not look at it as he entered the intersection; that after the impact he again looked at the light and observed it changing from green to amber and then to red; that as he neared the intersection he looked to the west and to the north and observed no cars coming; that he did see some motion of cars to the east but didn't think anything about it, and made no effort to determine the location or speed of the vehicles coming from the east; that he proceeded to go through the intersection when a car loomed up in front of him and the impact followed immediately; that at no time did he apply his brakes; that while he attempted to swerve to the left the left wheels of his car were approximately the same distance east of the center line of Illinois street at time of impact as they were when he entered the intersection; that following the accident plaintiff first told officer Riley she didn't know the condition of the light as she entered the intersection, then refuted this statement after learning defendant had signed a complaint against her and stated that the light was green in her favor; that following the accident he talked with a lawyer at the scene who suggested that he, for his protection, should sign a complaint against plaintiff, and this was done to get in the first lick. The complaint was later dismissed.

The evidence was undisputed that the impact occurred in the northeast quadrant of the intersection at a point 35 to 40 feet north of the south curb line of Seventh street and from 17′ 3″ to 20′ west of the east curb of Illinois street; that the front of defendant's car struck the left rear of plaintiff's automobile and that the damage extended to a point about 4 to 5 feet from the rear end of plaintiff's automobile. There was evidence that defendant's Austin-Healey was equipped with four-wheel hydraulic brakes in good condition; that it is easier to manipulate and turn than larger automobiles and that this is one of the advantages of a small car, the ability to make sharp turns; that defendant had had actual experience in making sharp turns; that as he approached and entered the intersection he knew the only danger from traffic at the intersection was from the east; that he had normal reactions; that his car was in good operating condition, good brakes, and could be stopped faster than the ordinary passenger car.

There was expert testimony based on tests performed at the intersection in question that an Austin-Healey Sprite, after reaching a pre-determined point, at a speed of 25 miles per hour, could be swerved 8 feet to the right in a forward distance of 14′ 8″ and 12 feet to the right in a forward distance of 20 feet and that at a speed of 25 miles per hour, after reaching a pre-determined point, could be stopped at a distance of 12′ 2″ to 14′ 7″ after applying the brakes.

Plaintiff, by instruction No. 3, submitted primary negligence of defendant in driving into the intersection against a red traffic light. Defendant countered with instruction No. 10 submitting contributory negligence of plaintiff in failing to maintain a careful lookout for defendant's car and other vehicles and for violation of the traffic light at said intersection, and instruction No. 11 submitting contributory negligence of plaintiff in failing to stop for a red traffic light.

Plaintiff, by instruction No. 2, submitted defendant's humanitarian negligence in failing to stop, slow or turn to the right after defendant saw, or in the exercise of the highest degree of care, should have seen plaintiff in a position of imminent peril.

Defendant countered with instruction No. 12, which hypothesized a finding that plaintiff drove through the traffic light when the light was red or stop for traffic on Seventh street and that after plaintiff's car came into a position of imminent peril it was so close that defendant could not avoid the collision.

Plaintiff presents but one issue for reversal on this appeal and that is that defendant's instruction No. 12 was prejudicially erroneous.

It is defendant's contention that plaintiff failed to make a case for the jury on humanitarian negligence and the court should not have submitted that question to the jury.

In our opinion we will designate appellant as plaintiff and respondent as defendant, the position occupied in the lower court.

Plaintiff's only contention on appeal is that defendant's instruction No. 12 was prejudicially erroneous because:

(1) It injects contributory negligence of plaintiff into a humanitarian case and is so drawn that the jury would probably understand that if plaintiff ran the red traffic light and thus contributed to her injury she could not recover.

(2) Because the instruction is so drawn as to limit the zone of peril to the time plaintiff entered the intersection when the jury could have found plaintiff entered a position of imminent peril prior to the time she entered the intersection.

(3) That the instruction seeks to avoid the burden of a sole cause instruction by combining language indicating the negligence of plaintiff caused the accident with converse language that defendant could not avoid the accident after plaintiff came into imminent peril.

Instruction No. 12 reads:

"With reference to the charge of negligence against the defendant, Mr. Wilson, as submitted to you in Instruction Number 2, the Court instructs the the jury as follows:

"By the phrase 'position of imminent peril', as used in that instruction, is not meant a place wherein there is just a mere, bare possibility of an injury occurring. It means a place and position wherein there is certain or impending danger.

"Now, with reference to the charge submitted to you in Instruction Number 2, you are instructed that Mr. Wilson was under no duty whatsoever to stop his car, slacken its speed, or swerve it aside until after he saw, or could have seen, that the car driven by Mrs. Burke was actually in a position and place of certain danger or imminent peril of colliding with his car, and even then Mr. Wilson was required only to use the means and appliances then and there at hand to avoid the collision.

"Therefore, you are instructed that if you find from the evidence that Mrs. Burks drove her automobile through the stop light, if you find the light was red or stop for traffic on Seventh Street at that time, and that after Mrs. Burks' car could first be seen by Mr. Wilson in a position of imminent peril of collision with his car it was then so close that Mr. Wilson, in the exercise of the highest degree of care and with safety to himself and others, could not have avoided the collision, then and in that event the plaintiff is not entitled to recover against Mr. Wilson under Instruction Number 2.

"In other words, you are instructed that before Mr. Wilson can be found guilty of negligence under Instruction Number 2, you must find by the greater

weight of all the credible evidence that he had a reasonable opportunity to avoid the collision both after Mrs. Burks' car came into a position of imminent peril and after Mr. Wilson saw or could have seen it in that position, and unless you so find, then you are instructed that this collision was not due to any negligence on the part of Mr. Wilson submitted in Instruction Number 2, and your finding on the issue submitted in Instruction Number 2, be in favor of the defendant, Mr. Wilson."

We will proceed to examine the suggested reasons why the instruction is erroneous. The first attack is to that part which reads: " * * * you are instructed that if you find from the evidence that Mrs. Burks drove her automobile through the stop light, if you find the light was red or stop for traffic on Seventh Street at that time, * * *".

█ It is apparent to us that this objection is well taken. The instruction containing this clause is erroneous because it injects into a humanitarian case the contributory negligence of plaintiff. We think the jury would probably understand that if plaintiff's failure to yield the right of way was a contributing cause to her injury she could not recover. Catanzaro v. McKay, Mo.Sup., 277 S.W.2d 566, 570 [3]; Sheerin v. St. Louis Public Service Co., Mo.Sup., 300 S.W. 2d 483, 487 [6]. The humanitarian doctrine seizes upon a fact situation as it exists at the time the defendant knew or should have known that plaintiff was in imminent peril. Whatever had transpired from the standpoint of either plaintiff or defendant, prior to that time, could not effect the rights of the parties thereafter. Faught v. Washam, 365 Mo. 1021, 291 S.W.2d 78, 81 [1], [2–3]. In this case it was stated:

" * * * 'It is prejudicial error, in an instruction submitting humanitarian negligence, to inject therein primary negligence of the defendant or contributory negligence of the plaintiff; to require consideration of any antecedent negligence of either plaintiff or defendant which existed prior to the time that the humanitarian doctrine properly commenced to operate; or *to predicate recovery upon any different facts than those which actually existed at the time the peril arose and* was discovered, or, *if there was a duty to keep a lookout, when it was discoverable by the exercise of the required degree of care.'"*

█ The presence or absence of contributory negligence is immaterial to the applicability of the doctrine. Price v. Nicholson, Mo.Sup., 340 S.W.2d 1, 9 [3]; Sheerin v. St. Louis Public Service Co., Mo.Sup., 300 S.W.2d 483.

The portion of the instruction dealing with the plaintiff's duty in stopping at the stop light had no place in this humanitarian case. Klecka v. Gropp, Mo.Sup., 278 S.W.2d 790, 795 [3]; Dwinell v. Thompson, Mo. Sup., 243 S.W.2d 988, 991 [5].

The instruction is so clearly erroneous for the reasons assigned under plaintiff's first contention that we deem it unnecessary to consider the second and third grounds for reversal. Since the case must be re-tried the court can remedy any other defects contained therein.

In defendant's brief he does not attempt to sustain the correctness of instruction No. 12 but contends that under the evidence the trial court should not have submitted to the jury the issue of humanitarian negligence.

The primary issue involved on this appeal is whether or not plaintiff made a submissible case on the ground of humanitarian negligence.

In instruction No. 2 plaintiff submitted her case on the theory that defendant saw or by the exercise of the highest degree of care on his part could have seen plaintiff in a position of imminent peril in time thereafter to have stopped his automobile or slackened or slowed the speed thereof or turned the same to his right and by so doing could have avoided the collision.

Our review of the submissibility of plaintiff's case on this theory requires that we review the evidence in the light most favorable to plaintiff, give plaintiff the benefit of all reasonable inferences arising therefrom and disregard defendant's evidence unless it aids plaintiff's case. Kirks v. Waller, Mo.Sup., 341 S.W.2d 860, 863 [2, 3]; Daniels v. Smith, Mo.Sup., 323 S.W.2d 705, 706 [2]; De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 633 [3, 4]. Favorable consideration of the evidence rule calls for a consideration of all the facts shown by plaintiff, not merely part of them isolated from the rest. Skidmore v. Haggard, 341 Mo. 837, 110 S.W.2d 726, 727 [1]; Walter v. Alt, 348 Mo. 53, 152 S.W.2d 135. And it does not require courts to supply missing evidence, or disregard the dictates of common reason and accept as true that which obviously, under all the record, is not true, or to give plaintiff the benefit of any other than reasonable inferences. Kirks v. Waller, supra, 341 S. W.2d page 863 [2, 3] (and see authorities cited therein).

The peril as a basic fact of the humanitarian doctrine "must be imminent, that is certain, immediate and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient to create imminent peril". Kirks v. Waller, supra, 341 S.W.2d pages 863, 864 [4]; Welch v. McNeely, Mo.Sup., 269 S.W. 2d 871, 876; Batson v. Ormsbee, Mo.App., 304 S.W.2d 680, 683.

Plaintiff must remove her case from the field of speculation, conjecture or surmise. Hartlage v. Halloran, Mo.App., 331 S.W.2d 197 [1].

The humanitarian rule seizes upon a factual situation as it exists at the time the defendant knew or should have known that plaintiff was in a position of imminent peril. Carney v. Stuart, Mo.Sup., 331 S.W.2d 558, 562 [4–6]. It is well settled that no duty on a defendant to act arises until plaintiff is actually in a position of imminent peril, and that when plaintiff is in a position of imminent peril is a question for the jury under all the evidence. Price v. Nicholson, Mo.Sup., 340 S.W.2d 1, 10 [6]; Harrington v. Thompson, Mo.Sup., 243 S.W. 2d 519. There must be substantial evidence from which the jury may make this determination.

The decisive questions presented here are when did plaintiff come into a position of imminent peril and what could defendant have done thereafter? The zone of imminent peril is always widened beyond the immediate path of a moving vehicle by the obliviousness of a person approaching its path. Crews v. Kansas City Public Service Co., 341 Mo. 1090, 111 S.W.2d 54, 57 [2]. This zone commences and the duty of a driver of a moving motor vehicle begins when he saw, or could have seen by the exercise of the highest degree of care, that the person approaching the path of his vehicle was oblivious to the dangers and was intent on continuing across his path. Homan v. Missouri Pacific R. Co., 334 Mo. 61, 64 S.W.2d 617. It is his duty to act on reasonable appearances of obliviousness and at a time when action would be effective. Womack v. Missouri Pacific R. Co., 337 Mo. 1160, 88 S.W. 368. However, the zone of imminent peril is much narrower when the approaching person is not oblivious or shows no reasonable appearances of obliviousness. Under such circumstances, "the duty of such operator to act does not commence until such person is actually in its path or so close to it that it is apparent (at the rate of speed and manner he is moving) that he will not stop before reaching it". Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 53. "In the absence of obliviousness, the position or danger zone of imminent peril of a person approaching the path of a moving vehicle reaches no farther beyond the direct path of such moving vehicle than the distance within which such approaching person is unable by his own efforts to stop short of it". Lotta v. Kansas City Public Service Co., 342 Mo. 743, 117 S.W.2d 296, 300; Yeaman v. Storms, 358 Mo. 774, 217 S.W. 495. Thus the greater the speed of the approaching vehicle, the wider the zone of imminent

peril. Frandeka v. St. Louis Public Service Co., Mo.Sup., 234 S.W.2d 540, 547 [10–14]; Banks v. Koogler, Mo.Sup., 291 S.W.2d 883, 889 [15–19]; Homfeld v. Wilcoxon, Mo. Sup., 304 S.W.2d 806; Findley v. Asher, Mo.Sup., 334 S.W.2d 70, 72 [2–4].

■ In the instant case we find from plaintiff's evidence that she was not oblivious to the defendant's approaching car. She testified that as she approached the intersection she looked to the south and saw defendant's car coming and that, as she was at or entering the intersection, she again looked to the south to see where his car was; that she thought it had stopped. Under such circumstances the duty of the defendant did not commence until plaintiff was actually in his path or so close to it that it was apparent "at the rate of speed and manner in which plaintiff's car was moving" that she would not stop before reaching it. Smithers v. Barker, Mo.Sup., supra. The path of a moving vehicle reaches no farther beyond the direct path of such moving vehicle than the distance within which such approaching person is unable by his own efforts to stop short of it. This rule was stated in the late case of Findley v. Asher, Mo.Sup., 334 S.W. 2d 70, 72, wherein Judge Hyde, speaking for the court, stated that under the humanitarian rule defendant's duty "did not commence until he saw or by the exercise of the highest degree of care could have seen that deceased was oblivious of his approach and intended to proceed across his path or that oblivious or not she was unable to stop short of his path". Frandeka v. St. Louis Public Service Co., Mo.Sup., 234 S.W.2d 540, 547. (See cases cited).

In the instant case the evidence was undisputed that the impact occurred in the northeast quadrant of the intersection 35 or 40 feet north of the south curb line of Seventh street and from 17′ 3″ to 20 feet west of the east curb line of Illinois street. The right front of defendant's car struck the left rear of plaintiff's automobile and the damage extended to a point from 4 to 5 feet from the rear end of plaintiff's automobile.

Defendant testified that as he approached the intersection the left wheels of his car were east of the center line of Illinois street; that he attempted, just prior to the collision, to turn to the left but that at the time of collision his left wheels were still east of the center line of Seventh street. Plaintiff testified that her car was 16 feet long and she could have stopped at the speed at which she was traveling when she entered the intersection in three car lengths or 48 feet so the jury could have found that plaintiff was in a position of imminent peril when her car reached a point 48 feet east of the path of defendant's moving vehicle.

The evidence shows that when defendant's car reached a point 25 feet south of the south curb line of Seventh street, he had an open and clear view of cars approaching the intersection on Seventh street from the east for many blocks. Plaintiff's evidence was that the right front of defendant's car struck the rear end of her car and that the damage extended to a point 4 or 5 feet from the rear of her car so the jury could have reasonably found from the evidence that at the time of the collision the front of plaintiff's car had cleared the path of defendant's car some 11 feet at the time of impact. If the impact occurred approximately 17 feet west of the east curb line of Illinois street then the front of plaintiff's car was 31 feet east of the intersection when her car entered a position of imminent peril. When the front of plaintiff's car was 48 feet east of the path of defendant's car plaintiff was in fact 59 feet east of the point because it was the last 4 or 5 feet of plaintiff's car that was struck, 11 feet having cleared defendant's path. Thus, at 25 miles per hour, under plaintiff's testimony, her car was traveling 36.67 feet per second which would require 1.6 seconds to travel 59 feet to point of impact.

■ Defendant testified that his average speed at the intersection was 22.5 miles per hour or 33 feet per second so the jury could have found that defendant was 52.8 feet from point of collision at the time plaintiff

entered the zone of imminent peril. Plaintiff offered evidence that defendant could stop his car in 14.58 feet after he got his foot on the brake. The defendant's normal reaction time is three-fourths of a second which the courts judicially note. Vietmeier v. Voss, Mo.Sup., 246 S.W.2d 785, 788. From his testimony he was traveling 22.5 miles per hour and in three-fourths of a second reaction time he would travel 24.75 feet so, from the evidence, defendant could have stopped his car after he discovered plaintiff in a position of imminent peril in 39.33 feet and thereby have avoided the collision.

The jury could have further found from the evidence that defendant could have turned his car to the right a distance of 8 feet within 14.67 feet of forward movement or 12 feet to the right in a distance of 20 feet of forward movement. The evidence related to swerving does not take into consideration reaction time so, adding reaction time to 14.67 feet, defendant could have turned to the right 8 feet in forward movement of 39.42 feet. Of course, from the evidence had he swerved to the right 5 feet, the accident would not have happened. We are of the opinion that from the evidence the jury could have found that a slight slackening of speed would have averted the collision.

Defendant in his brief states that in order for him to have swerved 8 feet to the right he would have had to start the movement a minimum of 39.406 feet south of point of impact or to swerve 20 feet to the right he would have had to start the movement 44.74 feet south of impact. It is defendant's contention that under either of the findings he would have had to be right at the south edge of the intersection of Seventh street or 10 feet south of the intersection, depending on whether you take 35 or 40 feet north of the south edge of the intersection as point of impact.

Under either of defendant's contentions we think that from the evidence the jury could have found that defendant, using the highest degree of care, could have discovered plaintiff's position of imminent peril in time to have stopped, turned to the right, or checked his speed and avoided the accident.

■■■ Defendant's testimony is that his car was in the east lane of traffic on Illinois street and remained in the east lane until after the collision. His evidence, unquestionably, shows that as he approached and entered the intersection, he was not using the highest degree of care to ascertain if there was approaching traffic on Seventh street. His evidence does not aid his case. He admits that the only danger of traffic was from his right, yet, he did not see plaintiff's car but only got a glimpse of moving traffic on Seventh street. We find that the evidence offered makes a submissible case under the humanitarian doctrine and was one for the jury.

We think it unnecessary to pass on the third alleged error in defendant's brief. If there be error in this contention it can be corrected on a re-trial.

Judgment reversed and remanded.

RUARK, P. J., concurs in separate opinion.

STONE, J., concurs.

RUARK, Presiding Judge.

I concur, because it appears, from evidence most favorable to plaintiff, that this was an "almost escaping" situation where any very slight action on the part of defendant would have enabled the plaintiff to pass beyond peril. But I am uncomfortable about expressions in the opinion which deal with fixed and positive stopping and turning distances and thus figure back. The briefs of the parties show that they go into careful calculations reaching into fractions of a second. When we deal with the humanitarian doctrine, involving the commencement of a zone of peril, which must be *certain*, and we (necessarily) fix the beginning point by estimates of speed and distance, then work by figuring back (again on "average speed" and an "average" of reaction time) to liability based on fractions of seconds, it seems to me to be inconsistent.