**Olivia BURNS, Respondent,**

v.

**David A. MAXWELL, Appellant.**

**No. 52372.**

Sept. 11, 1967.

William P. Carleton, and Sherman Landau, St. Louis, for respondent.

Murphy & Kortenhof, Edward E. Murphy, Jr., St. Louis, for appellant.

PRITCHARD, Commissioner.

Appellant claims that the trial court abused its discretion in granting respondent a new trial on the ground that the verdict of the jury was against the weight of the evidence because respondent did not make a submissible case under the humanitarian doctrine. The sole assignment of negligence under that doctrine was failure to slacken speed so as to avoid the collision (MAI No. 17.15).

Respondent's claim for damages for personal injuries, in the amount of $25,000, arose out of a collision between two automobiles on April 29, 1963, at the intersection of Spring Avenue and Natural Bridge in the city of St. Louis.

Respondent testified that after ending her work as an assembler for Carter Carburetor Company, 2840 North Spring, she drove a 1957 Lincoln two-door convertible north on Spring about four or five blocks to Natural Bridge. There was a stop sign on Spring as it made a "T" intersection with Natural Bridge. Respondent edged her way up to the stop sign behind four or five preceding cars. She then stopped at the south curb of Natural Bridge and looked to her left and saw *two* cars coming east on Natural Bridge near Prairie Avenue, which was about 537 feet away. It was misting rain at the time. On the southwest corner of the intersection was a used car lot, and along it, just west of Spring, there was no parking for about 40 or 50 feet. Natural Bridge was eight lanes wide, and at the intersection with Spring was practically level. · Eastward toward Grand Avenue, there was a slight upgrade. There was a double yellow line for the center of Natural Bridge and white lane lines for the cars. When she looked to her left respondent saw the two cars coming east in the second and third lanes ("the

first one was close to the parked car lane and the other was in the other lane"; one car was in the third lane over from the center lane and the other in the second lane over from the center lane; the lane immediately next to the center lane was open with no cars in it). She then looked east and saw two cars just crossing Grand Avenue, then looked to her left again and saw the two cars midway (in the center of the block) between Prairie and Spring, over 250 feet away. She started out after looking the second time to the left and was curving to the left to make the left turn into Natural Bridge. As she started across her speed was between 5 and 10 miles per hour. When respondent's front wheels were over the yellow line, the front end of appellant's car collided with her left rear fender, as appellant told her afterward. Respondent's convertible was yellow with a black top, and she heard no horn sounded by any eastbound vehicle.

According to Police Officer William D. Smith, who investigated the collision, Natural Bridge was approximately 90 or 92 feet wide; there were three eastbound lanes on its south side, and a curb lane for parking. At the intersection, Spring Avenue was approximately 36 feet wide, with one north and one south lane for traffic, and parking areas on both sides. He found the left rear fender of respondent's car damaged and appellant's Chevrolet was damaged on its left front, and appellant told him that as he was eastbound on Natural Bridge approaching Spring he was going about 30 miles per hour in the center lane. On deposition, appellant testified that he had slowed to 25 miles per hour when vehicles (two) in front of him braked and slowed and when respondent suddenly appeared in view. His speed at impact was about 20 miles per hour. When respondent's car came to a stop it was almost to the north curb of Natural Bridge. He estimated respondent's car was going 5 to 10 miles per hour when he first saw it.

■ Appellant's version of the facts preceding the collision differed from that of respondent. He testified that he was following a car length behind two other vehicles in lanes to his either side and did not see respondent crossing in front of him until he was one car length away at 25 miles per hour. He had slowed from 30 miles per hour to 25 miles per hour when he saw the vehicles ahead also slowing. According to appellant it was raining hard at the time and his windshield wipers were on. The car which was on appellant's left stopped (short of respondent); the car on his right swerved around her. In determining the submissibility of respondent's case, her evidence and legitimate inferences therefrom are to be regarded as true and that of appellant is to be disregarded unless it aids the respondent. Wapelhorst v. Lindner, Mo., 269 S.W.2d 865, 870 [6].

■ These parties were on collision courses at their respective distances and speeds from the point of impact. (At respondent's slowest speed of about 5 miles per hour, and appellant's speed of 30 miles per hour, each would have used between five and six seconds to reach the point of collision.) According to respondent, when she started up from her stopped position at the south curb of Natural Bridge she saw appellant (with *one* other car alongside) 250 feet or more away to her left. If she could see his vehicle, certainly he could see her. Although there was then no situation of danger upon which humanitarian duty to act would seize, appellant was charged with knowledge of the movements of respondent's yellow convertible thereafter. Wyckoff v. Davis, Mo., 297 S.W.2d 490, 493 [1]. The jury could find that at sometime thereafter, as respondent proceeded across the intersection at her slow speed she came into and was in a position of immediate danger by reason of a fixed purpose of entering the path (the lane) of appellant's travel. The exact place of such immediate danger is for the jury to determine. West v. St. Louis-San Francisco Railway Company, Mo., 295 S.W.2d 48, 52; Harrington v. Thompson, Mo., 243 S.W.2d 519, 525 [8, 9].

Respondent needed only a fraction of a second (perhaps one-half second, if the jury should believe she had attained her highest speed of 10 miles per hour, 14 feet per second) to escape the collision. Under the facts and circumstances here, with at least a damp or wet street from mist under respondent's testimony, it cannot be judicially known the precise distance in which appellant could have stopped, Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9, 12, and to infer from such stopping distance that his speed could have been sufficiently slackened to permit respondent to escape. But the jury could legitimately infer from the relative speeds and distances of the vehicles from each other, and considering the factor of when respondent was in immediate danger of being injured, as appellant could see, that appellant had somewhere around three seconds within which so to reduce his speed. See the case of Stith v. St. Louis Public Service Co., 363 Mo. 442, 251 S.W.2d 693, 34 A.L.R.2d 972, where the plaintiff pedestrian needed only another foot or foot and a half to have avoided the accident; Diel v. St. Louis Public Service Co., 238 Mo. App. 1046, 192 S.W.2d 608, 611 [1], where plaintiff pedestrian needed only a step to clear the path of the streetcar, and the court said, "The slightest checking of the speed of the car would have saved plaintiff from harm." In Smith v. Thompson, 346 Mo. 502, 142 S.W.2d 70, 74 [8], the truck moving across the railroad crossing would have been out of danger from being struck by the train (at its sustained speed ten or eleven seconds away) in a little more than a second. The court said, "If all this is true, no further testimony was necessary to raise a warrantable inference that the enginemen could have checked its speed sufficiently to have avoided the collision." See also Keithley v. St. Louis Public Service Company, Mo.App., 379 S.W.2d 149, 152 [5], where it was said, "No lengthy or involved mathematical calculation is necessary to reach the conclusion that an earlier application of the brakes with a corresponding decrease in the speed of the bus, or a slight swerving of the vehicle a few feet to its left, would have been sufficient to allow the plaintiff's car to have safely cleared the path of the motorbus"; and Schmittzehe v. City of Cape Girardeau, Mo., 327 S.W.2d 918, 924 [7, 8], "But, it must be recognized that in some situations 'the facts speak for themselves without the aid of expert evidence, as where the evidence shows that the plaintiff's vehicle had but barely failed to get in the clear before the occurrence of the collision, so that only the least additional time would have enabled the plaintiff to make his escape.' (Citing cases)." Appellant had somewhere around three seconds to slacken speed after it would have been reasonably apparent to him that respondent would drive into his path. His distance at his speed of 30 miles per hour would have been about 132 feet to the west of respondent's path. His reaction time being judicially known at $3/4$ second, Vietmeier v. Voss, Mo., 246 S.W.2d 785, 789, he would still have had about 100 feet to reduce his speed and delay reaching the point of collision by at least $1/2$ second, as the jury could find. A submissible case was made by respondent, and the court did not abuse its discretion in awarding a new trial to her on the ground that the verdict was against the weight of the evidence. Civil Rule 78.01, V.A.M.R.; Losh v. Benton, Mo., 382 S.W.2d 617, 619.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

FINCH, P. J., and DONNELLY, EAGER and STORCKMAN, JJ., concur.