**Eula CLIFTON, Respondent,**

v.

**Harold Nathan CRIDER, Jr., et al.,
Appellants.**

**No. 55894.**

Supreme Court of Missouri,
En Banc.

Nov. 13, 1972.

E. J. Murphy, Butler, for respondent.

Heilbron & Powell, by Sylvester Powell, Jr., Kansas City, for appellants.

STOCKARD, Commissioner.

Defendants have appealed from a judgment in the amount of $22,500 in this action for wrongful death based on the humanitarian doctrine. The notice of appeal was filed prior to the effective dates of § 477.040, V.A.M.S., and the current provisions of Art. V, § 3, Constitution of Missouri, V.A.M.S. Therefore, appellate jurisdiction is in this court. Art. V, § 31, Par. 4, Constitution of Missouri.

Appellants assert that respondent failed to make a submissible case on humanitarian negligence on the submitted issue of failure to slacken speed.

Clyde Sterling Clifton, husband of respondent, hereafter referred to as "decedent," sustained fatal injuries when he attempted to make a left turn with his tractor from U. S. Highway 71 into a driveway and was struck by the tractor-trailer truck operated by Harold Nathan Crider, Jr., an employee of Bow Wow Company, Inc.

From the evidence offered by respondent a jury reasonably could find the following facts. Decedent was operating his tractor northward on U. S. Highway 71 at approximately 10 to 15 miles an hour, and was pulling a 14 by 7 foot wagon behind the

tractor. The truck, traveling at a speed estimated to be 60 miles an hour, was also going northward, and the two vehicles were both in the east lane for northbound traffic. Bill Clifton, decedent's son who was riding on the wagon, saw the truck approaching, and he knew his father was going to turn left into a driveway. When the truck was 300 to 350 feet from the wagon and the tractor was 30 to 50 feet south of the driveway, he stood up and motioned with his hands; waving them forward and backward. He saw his father turn and look to the rear in the direction of the truck, and "at that split moment right there" after deceased "had already made his turn, and just as he started making his turn the truck all of a sudden, which was right behind him, whipped around" into the west or left lane and the collision occurred about the middle of the west lane in front of the driveway.

The operator of the truck was the only witness for appellants. He testified that the maximum speed of the truck on level ground when loaded as it was at the time was 45 to 50 miles an hour, and that as he approached the tractor his speed was 45 miles an hour. He saw the tractor ahead of him, but there was nothing unusual to cause him alarm. He "let up on the gas a little" to permit two approaching automobiles to pass, and when he was about 175 feet from the wagon he turned into the left lane to pass. He saw no left turn signal and had no idea the tractor was going to turn left. As he started to pass, the deceased's son stood up and "threw his hand up real quick." He then slammed on his brakes, heard a noise, "like the trailer came up on the tractor," and in his rear-view mirror he saw the side of the trailer and was afraid it was going to "jack-knife." He glanced back to the front and saw the tractor; "he just came on across right in front of me." The driver slammed on his brakes again and tried to get closer to the west shoulder but could not avoid the tractor. Under the conditions then existing and with the means at hand, he estimated that he could have brought the truck to an emergency stop in approximately 300 feet.

A Highway Patrolman testified that he arrived at the scene a short time after the collision. He found a solid skid mark 30 feet in length that started in the northbound lane a foot or two east of the center line and which crossed the center line into the southbound lane about a foot or two west of the center line. This mark started about 155 feet south of the driveway. It "faded out" and there were then two "faded continuous marks" 119 feet 7 inches in length which continued in the southbound lane and angled toward the driveway and ended there. There were heavy dual skid marks 44 feet 7 inches in length from the driveway and ending where the truck was located. The patrolman testified that the skid marks indicated that the first application of the brakes was made as the truck was crossing the center line.

■ The first and basic fact of liability, "it might be denominated the chief one," under the humanitarian rule is what formerly was called a position of imminent peril, and is now denominated a position of immediate danger. MAI 17.14. It is only when immediate danger of being injured exists that the humanitarian rule seizes upon the then existing factual situation, in effect "blotting out primary or antecedent negligence," Downing v. Dixon, Mo.App., 314 S.W.2d 927, 930, and imposes a duty thereafter to exercise the required degree of care to avoid the threatened injury. Davis v. Quality Oil Company, Mo., 353 S.W.2d 670, 673. In this case, whatever transpired from the standpoint of either the deceased or the operator of the truck prior to the time deceased entered into a position of immediate danger of being injured does not affect the right of the parties thereafter. Catanzaro v. McKay, Mo.Sup., 277 S.W.2d 566, 571. Regardless of whether or not Harold Crider had some duty to act or refrain from acting in the exercise of the required de-

gree of care based on primary negligence, under the humanitarian rule there arose no duty whatever on his part to take or refrain from taking any action unless and until decedent entered into what is called a position of immediate danger of being injured. Paydon v. Globus, Mo.Sup., 262 S. W.2d 601; Yarrington v. Lininger, Mo., 327 S.W.2d 104; Davis v. Quality Oil Company, supra. In addition, if it is shown by the evidence that decedent was in a position of immediate danger of being injured, in order to impose liability on appellants under the humanitarian rule, it is necessary that the evidence also show that Harold Crider, after receiving actual or constructive notice of the immediate danger, then "had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others," in this case by slackening speed, and that he failed to exercise the required care to avert such injury. Shirley v. Norfleet, Mo., 315 S.W.2d 715.

The position of immediate danger of being injured referred to in the humanitarian rule "is that position of danger to the plaintiff, whether or not plaintiff was negligent in getting there, in which by reason of the then existing circumstances, *if unchanged*, injury to him is reasonably certain and not a mere possibility *contingent on some other occurrence*. The courts have said that 'The peril must be imminent —that is, certain, immediate and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient to create imminent peril.'" (Italics added). Yarrington v. Lininger, supra, at p. 109 of 327 S.W.2d.

Although respondent pleaded humanitarian negligence in failing to sound a warning, slacken speed, swerve or stop, the submission to the jury was only on failure to slacken speed.

We shall first determine when, as a matter of law, the deceased first came into a position of immediate danger within the meaning of the humanitarian rule.

Respondent argues that decedent was in a position of immediate danger "for some time prior to the commencement of the left turn" by the tractor. This necessarily is premised upon the fact that if the speed of the truck was not slowed or if the course of the truck was not changed, injury to decedent was reasonably certain because the truck would overtake the slower moving tractor. However, as noted in Ornder v. Childers, Mo., 327 S.W.2d 913, 917, motor vehicles "on two-lane highways continuously overtake and pass other [vehicles] in their proper lanes without giving rise to an imminent peril situation." If a collision occurs by reason of the overtaking vehicle striking the rear of the front vehicle it presents the usual rear-end collision situation which is general negligence and not humanitarian negligence in the generally accepted sense. Perhaps it could be said that the occupant of the front vehicle came into a position of immediate danger when it became apparent that by reason of speed and inability to pass a collision would occur if the speed of the overtaking vehicle was not slackened or other evasive action taken. But, we do not have a rear-end collision in this case. Here, according to respondent's theory, the truck was overtaking the tractor, and the tractor started to turn left while the truck was still in the east or northbound lane, and then the truck "whipped around" into the southbound lane and hit the tractor at about the middle of that lane. That factual situation demonstrates primary negligence on the part of Harold Crider in that he turned his truck into the southbound lane when he knew or should have known that decedent had started into that lane. As subsequently noted, this might indicate humanitarian negligence in failure to swerve to the right, but that was not submitted.

In view of the speed of the two vehicles and the testimony of Harold Crider, it is reasonable to conclude that he intended to proceed at an undiminished speed until he was fairly close to the tractor and then move into the west lane and pass it.

There is no evidence that he could not have done so if the tractor had not turned into the west lane. Two oncoming vehicles had passed and there is no showing that the highway ahead was not free of other oncoming vehicles.

■ When we consider respondent's version of the facts, decedent first came into a position of immediate danger when the tractor started to turn left and Harold Crider knew or should have known that the tractor would not leave the northbound lane before the truck would overtake it, and the truck could not pass by using the west lane. Harold Crider then had the duty to take evasive action. We cannot accept the contention of respondent that the decedent entered a position of immediate danger when decedent's son started to motion with his hands. This could not impart knowledge to Crider that decedent intended to turn left without resorting to gross speculation.

In making a submissible case respondent is entitled to rely on appellant's evidence favorable to her. If we accept appellants' version of the facts favorable to respondent, and also her evidence, decedent first came into a position of immediate danger when, after Harold Crider had started to turn into the west lane to pass, the decedent turned the tractor to the left and into the west lane in order to make a left turn into the driveway. At that time Harold Crider knew or should have known that he could not pass by using the left lane, and a duty then arose to take evasive action. The point at which the immediate danger of injury could first arise under these facts is substantially the same as when respondent's evidence alone is considered.

We shall now consider whether under respondent's evidence, or under her evidence and that of appellants favorable to her, a submissible case was made on the ability to avoid injury to decedent by slowing speed after decedent entered a position of immediate danger.

According to Harold Crider, he was 175 feet south of the tractor when he started to turn into the west lane in order to pass.

Respondent's evidence does not show where the truck was when the tractor started to turn, but at most it shows that the truck was 300 to 350 feet away when decedent's son stood up on the wagon and started to motion with his hands. The only evidence in the record of stopping distance is the testimony of the operator of the truck who stated that under the then existing circumstances the truck could have been brought to an emergency stop in 300 feet. If the effort to avoid injury was only to slacken speed, as was submitted, the time in which the truck reached the point of impact would have been less than that which would have resulted from an effort to stop. If an effort to *stop* would not permit the tractor to cross the west lane of the highway before the truck reached it, which it did not, an effort to *slacken speed* would have been at least equally ineffective.

■ There is nothing in the evidence to show that the two approaching vehicles would not pass the tractor in time for Harold Crider to pass the tractor, and in fact they did. While there may have been primary negligence involved in failure to slacken speed, and possibly humanitarian negligence in failing to swerve to the right under respondent's version of the facts, matters we do not now rule, under these circumstances there was no humanitarian negligence in failing to slacken speed.

■ This is not an "almost missing" case where the slightest checking of speed would have prevented the collision. See Burns v. Maxwell, Mo., 418 S.W.2d 138. While it is a jury question as to where a position of immediate danger arises, the jury can make such a finding only when there is an evidentiary basis therefor. Kinealy v. Goldstein, Mo.App., 400 S.W.2d 438. The earliest time, as a matter of law, that such position could occur in this case results in Harold Crider not having the ability under the attending circumstances, to have averted the impending injury by taking the only evasive action submitted; slackening of speed.

The judgment is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court En Banc.

FINCH, C. J., and DONELLY, SEILER, HOLMAN and HENLEY, JJ., concur.

MORGAN, J., dissents in separate dissenting opinion filed.

BARDGETT, J., dissents and concurs in separate dissenting opinion of MORGAN, J.

MORGAN, Presiding Judge (dissenting).

I respectfully dissent, because I believe the plaintiff made a submissible humanitarian case on the "submitted issue of failure to slacken speed." My conclusion is consistent with that of Pritchard, C., who prepared a memorandum of dissent prior to his becoming a Judge of the Court of Appeals, and I set out his reasoning as expressed therein:

"The emphasis placed upon the testimony of defendant Crider as to what he saw and did is not in accordance with the well-established rules of setting forth and considering the evidence in the light most favorable to plaintiff, who here has the verdict. Only the evidence of defendant which is favorable to plaintiff need be considered.

There is no question of consideration of any antecedent or primary negligence in this case. The real and only question in this case is whether deceased, under all the facts and circumstances (which the jury could consider) was in a position of immediate danger under the humanitarian doctrine.

In the cited case of Ornder v. Childers, Mo., 327 S.W.2d 913, 916, the court did *not* say *that as a matter of law* the plaintiff made no humanitarian case. The reversal and remand for new trial was done because plaintiff's humanitarian instruction did not properly hypothesize the point of imminent danger as a guide to the jury in determining same (under the practice of hypothesizing facts then followed). It is interesting to note that the Ornder case had merely the factual situation of the plaintiff's left turn into a driveway when defendant was 186 feet behind him, and having the ability to swerve (the submission, which was held to be a jury question). There were no additional facts, as are here in evidence, which put defendant upon notice that if he did not take appropriate action something was going to happen ahead of him. Those facts are these:

1. This is not a passing situation which would not give rise to imminent danger. First, the jury could have found, from the evidence of skid marks, *starting* in Crider's northbound lane and continuing left into the southbound lane, same were caused by his vehicle being pulled (not driven) in that direction. In his statement to the Highway Patrolman, given immediately after the accident, Crider did not contend that he was in the act of passing either before or at the time of impact.

In the opinion, emphasis is given defendants' theory that the tractor started to turn left while the truck was still in the northbound lane, 'then the truck "whipped around" into the southbound lane and hit the tractor at about the middle of the lane.' That factual statement of the situation and the conclusion that it demonstrates primary negligence on Crider's part ignores the further evidence which the jury could legitimately find.

It is of no consequence that the facts set forth in the opinion would support an unsubmitted ground of failure to swerve, because the facts do support a zone of immediate danger within which Crider had the present ability to slacken his speed and avoid the collision. It is interesting to note that even if the evidence were insufficient to charge Crider with a duty to take evasive action 300 to 350 feet to the rear (which it is not), and the only place of immediate danger was when the trac-

tor-wagon started to turn left, to submit the case on failure to swerve (to the right) would undoubtedly cause an application of the term 'gross speculation' used in the opinion.

2. Again Crider's testimony is considered, in view of the speeds of the two vehicles, to support a conclusion that he intended to proceed at an undiminished speed until he was fairly close to the tractor and then move into the west lane and pass it. Such a conclusion, made in this court contrary to what the jury could have found, ignores the evidence of humanitarian negligence. So does the further consideration of 'respondent's version of the facts, as to where decedent came into a position of immediate danger' (when the tractor started to turn left, the opinion says, and that is not plaintiff's theory).

It is just simply not correct to say that the jury could not have found that decedent came into a position of immediate danger when his son started to motion with his hands. The son testified that this was when the truck was 300 to 350 feet behind the tractor-wagon. Crider admitted he saw the waving of the hands. His further admission was that under the existing circumstances he could stop the truck within 300 feet. Surely the jury could (and did) find that:

a. This was a slowly moving tractor ahead of Crider, approaching a farm driveway, where such farm vehicles are wont to turn in.

b. The waving of arms by decedent's son put Crider on notice that the decedent might make a left turn into the driveway, as the jury could find. *Then* the duty of Crider to take evasive action arose, and he had the ability timely to avert the collision by slackening his speed within the 350 to 400 feet available to him.

3. The opinion attempts to show that plaintiff made no case of humanitarian negligence upon the submission of failure to slacken. Again Crider's evidence is considered. The facts do not consider what Crider's admission is: *He could stop within 300 feet at his speed and the circumstances existing.* It is not the case that an effort to stop would not permit the tractor to cross the west lane of the highway (to a position of safety). Note that under the evidence Crider had 350 to 400 feet to stop after he was charged with knowledge that something was going to happen ahead of him. A stop here *would* have been effective under the facts, and the opinion ignores the many cases which say that if a stop can be made, the jury may conclude that slackening would have been effective to avoid the collision. See again Crook v. Dooley, Mo., 389 S.W.2d 809, 813 and cases cited. It is clear that if Crider had stopped within the 300 feet that he said he could do it, he would have been short of the tractor-wagon's position. Under the evidence, he had up to 50 feet more in which to slacken, if slackening would take up more distance. Such a finding would thus not be resorting to gross speculation as the opinion says."