James V. WHITE, Respondent,

v.

Osee E. GALLION, Appellant.

No. 38987.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Sept. 19, 1978.

Motion for Rehearing or Transfer
Denied Nov. 15, 1978.

**684**

Armstrong, Teasdale, Kramer & Vaughan, Frank N. Gundlach, Richard B. Scherrer, St. Louis, for appellant.

Murry A. Marks, Clayton, William R. Kirby, St. Louis, for respondent.

ALDEN A. STOCKARD, Special Judge.

Defendant has appealed from the judgment entered after a jury verdict in favor of plaintiff in his action for personal injuries sustained as the result of being struck by defendant's automobile. For the report of a previous appeal in this case see *White v. Gallion*, 532 S.W.2d 769 (Mo.App.1975).

Plaintiff's submission to the jury was on humanitarian negligence in failing to slacken speed. In two points in his brief defendant asserts that the evidence was insufficient to support that submission.

■ In determining whether a submissible case was made, the evidence is considered in the light most favorable to plaintiff, accepting as true all that is not entirely unreasonable or contrary to physical facts or natural laws, and giving to plaintiff the benefit of all favorable inferences that reasonably may be drawn from such evidence. *Houghton v. Atchison, Topeka & Santa Fe Railroad Co.*, 446 S.W.2d 406 (Mo. banc 1969).

Plaintiff was struck by defendant's south bound automobile when he was crossing Newstead Avenue from east to west at the intersection with Lexington Street. There were stationary stop signs for traffic on Lexington but none on Newstead for north-south traffic. At the time of the accident, approximately 3:30 o'clock in the afternoon of March 31, 1972, plaintiff was wearing dark clothing, and because it was misting rain the visibility was poor. When plaintiff started to cross Newstead he looked to his right and left for traffic. He saw automobiles going north, but none going to the south, and according to him there were no automobiles parked or stopped on the east side of Newstead. He then started to cross Newstead, which was approximately 36 feet in width. The traffic was "pretty slow" and when he reached the middle of the street he again looked to the north but saw no automobile although he could see about half a block. When he was "a few feet from the [west] curb" he looked again to the north and saw defendant's automobile "close" to him and he "tried to run it" but was able to take "just a few steps" when he was struck by the "front end" of defendant's automobile. The movement of the automobile and location of plaintiff after the collision indicates that plaintiff was struck by the right front fender.

Defendant testified that as he drove south on Newstead at about 20 miles an hour he observed north bound traffic on Newstead backed up from Natural Bridge to Lexington, and that there were parked cars on the east side of Newstead. As he approached the intersection with Lexington he took his foot off the accelerator, and when he first saw plaintiff he was traveling 15 to 17 miles an hour and plaintiff was about the center of the north bound automobiles stopped for the traffic light at Natural Bridge. According to defendant, plaintiff darted out taking long steps, almost running, and looking southward, and he did not turn and look toward defendant. Plaintiff cleared the front of his car, and when he was almost to the curb he fell backwards into the right front fender of defendant's automobile. He brought his automobile to a stop within the length of the automobile, seventeen feet, or as he stated another time, in ten feet.

In this humanitarian case the burden was on plaintiff to establish every essential element of his theory of submission by substantial evidence or by inferences reasonably deducible therefrom. *Yarrington v. Lininger*, 327 S.W.2d 104, 109 (Mo. 1959). As stated in *Epple v. Western Auto Supply Co.*, 548 S.W.2d 535, 540 (Mo. banc 1977), "the plaintiff must establish the following five elements: 1) the plaintiff was in a position of immediate danger; 2) the defendant was aware or should have been aware of the plaintiff's position of peril; 3) after receiving such notice, the defendant had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; 4) the defendant failed to exercise the requisite care to avert such impending injury; and 5) by reason thereof, the plaintiff was injured."

Defendant contends there was "no evidence from which the jury could find that plaintiff was in a position of immediate danger for a sufficient time * * * for the defendant [thereafter] to have acted * * * [and] to have avoided striking and injuring the plaintiff by slackening his speed * * *."

A determination of when a plaintiff has entered a position of immediate danger must be made in light of the facts and circumstances of each case. *Hood v. Heppler*, 503 S.W.2d 452, 457 (Mo.App.1973). When and where a plaintiff enters into a position of immediate danger is a question for the jury, *Yarrington v. Lininger, supra,* but there must be substantial evidence from which the jury can make that determination, *Clifton v. Crider*, 486 S.W.2d 274, 278 (Mo. banc 1972), and "the evidence must [show] the relative positions when, and relative movements after, plaintiff came into a position of immediate danger." *Corbett v. Snitzer*, 558 S.W.2d 392, 394 (Mo.App.1977).

It is clear that when plaintiff stepped off the curb of Newstead Avenue and started walking he was not then in the path of defendant's automobile. However he was walking in a direction and at a speed that placed him on a collision course with defendant's automobile unless plaintiff or defendant changed speed or direction. Plaintiff said he looked to the north but did not see defendant's automobile. Defendant testified that as plaintiff walked westward across Newstead he was looking to the south, which was away from defendant's automobile, and that he did not look toward defendant. In either event plaintiff was negligent, but negligence on his part in getting into a position of immediate danger is immaterial. Also, in either event, plaintiff was oblivious to the approach of defendant's automobile, but defendant was aware of his presence and that he was oblivious to the impending danger. Plaintiff's obliviousness widened the zone of immediate danger beyond the immediate path of defendant's automobile. *McDonough v. St. Louis Public Service Company*, 350 S.W.2d 739 (Mo.1961), and imposed on defendant the duty to act in avoidance when he saw, or by the exercise of the highest degree of care could have seen, plaintiff approaching the path of his automobile oblivious to the danger and intent upon continuing into its path. *Gottlieb v. Szajnfeld*, 550 S.W.2d 936 (Mo.App.1977); *Williams v. Funke*, 428 S.W.2d 11 (Mo.App.1968). From the facts and circumstances in this case we conclude that there was substantial evidence from which the jury could determine that plaintiff entered into a position of immediate danger.

We next must determine whether there was sufficient evidence to authorize a finding that once plaintiff was in a position of immediate danger, defendant had the present ability to have averted the impending injury to plaintiff by slackening speed. Plaintiff moved across the front of defendant's automobile and was struck by the right front fender. Defendant testified that he made it across to safety and then fell back, but plaintiff is entitled to rely on his version of the occurrence, and the facts of his version make this what is called an "almost escaping" case which is defined as a situation where plaintiff needed only a fraction of a second to emerge from a position of immediate danger to a place of

safety, and if defendant had taken the slightest action to avoid the collision no injury would have occurred. See *Epple v. Western Auto Supply Co., supra* at p. 542; *Burns v. Maxwell*, 418 S.W.2d 138 (Mo. 1967); *Schmittzehe v. City of Cape Girardeau*, 327 S.W.2d 918 (Mo.1959). In establishing an "almost escaping" case in which plaintiff submitted as humanitarian negligence the failure to slacken speed, there must be evidence, direct or circumstantial, that in the space and time available, defendant's speed could have been slackened sufficiently to enable plaintiff to escape injury, *Stith v. St. Louis Public Service Co.*, 363 Mo. 442, 251 S.W.2d 693, 698 (1952), and in an appropriate case plaintiff can meet his burden by presenting the factual situation and let the facts speak for themselves. *Woods v. Kurn*, 183 S.W.2d 852 (Mo.App. 1944).

Defendant testified that he first saw plaintiff when he was about the middle of the northbound automobiles, and that he was then walking rapidly toward the path of his automobile oblivious to its approach. This would mean that at that time plaintiff was approximately 21 feet from the point of impact. While walking at a normal speed of 2.9 to 4.4 feet per second, *Miller v. St. Louis Public Service Co.*, 389 S.W.2d 769 (Mo.1965), it would have taken plaintiff approximately 7.2 to 4.7 seconds to reach the point of impact. Assuming that his walk was rapid, as defendant testified, and was as much as 5 miles an hour, or approximately 7.5 feet per second, it would have taken him 2.8 seconds to reach the point of impact. Defendant was traveling 15 to 18 miles an hour, or approximately 22.5 to 27 feet per second. This would place him from at least 63 feet and not more than 194 feet from the point of impact when defendant first saw plaintiff. It is true that defendant testified that plaintiff was "approximately one-half the length" of his automobile away when he first saw him but as above demonstrated this estimate of distance is not consistent with the physical facts the jury was entitled to accept.

The evidence that defendant was able to stop his automobile after he applied the brakes in either 17 or 10 feet, while hardly consistent with accepted stopping distances for defendant's speed, does establish that his automobile was equipped with brakes in working order.

■ Accepting defendant's estimates of his speed and stopping distance, and defendant's testimony of plaintiff's location and conduct when defendant first observed him, and discounting as inconsistent defendant's estimate of the distance between plaintiff and defendant when defendant first saw plaintiff, which a jury was authorized to do, it is evident that a jury reasonably could have found that when the duty first arose for defendant to take affirmative action he could have, by only a slight slackening of speed, avoided injury to plaintiff. We find no merit to defendant's contentions that the evidence was not sufficient to submit humanitarian negligence in failing to slacken speed.

Defendant's remaining contention is that the trial court abused its discretion in denying his motion to strike venireman Sam Ballard for cause for the reason that "the answers he gave as to prior personal injury claims, his experience in that regard and the various accidents he had been involved in showed that he could not be a fair, impartial and competent juror and enter the jury box with an open mind * * * ." This is not the reason submitted to the trial court or assigned in the motion for new trial.

On voir dire examination venireman Ballard stated that ten or twelve years previously he made a claim against an insurance company for a broken finger. Also, he had sustained head injuries requiring hospitalization in an automobile accident about three years previously but "they never caught up with the fellow." He also stated that about fifteen years previously his sister was in a streetcar accident. After this information was brought out defendant made no challenge to this prospective juror. Subsequently, venireman Ballard stated that he had been involved in an automobile accident the previous Saturday and had sus-

tained some injuries, but that he felt "okay" although he had some chest pains occasionally. He was asked by defendant if he thought that "because of your situation you'd rather not serve on the jury, or you are not able to serve on the jury." He replied, "I am able to serve. I am willing to serve on it. I'd rather not serve on it." Defendant then asked that "the juror be stricken for cause; not able to sit through this." The court then inquired concerning the nature and extent of the injuries he had sustained, and the treatment received. Mr. Ballard assured the court that he felt that he could serve on the jury. The court stated that it would "take whatever word you say." No further request or challenge was made by defendant.

Defendant never challenged the juror for cause at the time of the voir dire examination for the reason now asserted, and in the motion for new trial the assignment was that the juror "had been in the hospital for personal injuries twice within the 48 hour period immediately preceding the voir dire examination, and, therefore, could not sit as a fair and impartial juror." The issue presented by defendant's brief has not been preserved for appellate review.

We comment gratuitously that if this contention had been preserved for appellate review, it would be without merit. Defendant has not demonstrated any prejudice to him. We do not know whether venireman Ballard served on the jury, and so far as is shown by the record he may have been peremptorily challenged by plaintiff. In the absence of demonstrated prejudice defendant is not entitled to a reversal of the judgment and a new trial. *Moss v. Mindlin's, Incorporated*, 301 S.W.2d 761 (Mo.1957). Finally, the trial court is vested with broad discretion in determining the qualifications of veniremen to sit as jurors, and its decision on such matters is not to be disturbed unless clearly erroneous constituting an abuse of that discretion. *Eickmann v. St. Louis Public Service Company*, 323

S.W.2d 802 (Mo.1959). That clearly did not occur in this case.

The judgment is affirmed.

DOWD, P. J. and SNYDER, J., concur.