**Richard O. RODGERS, et al., Appellants,**

v.

**JACKSON COUNTY ORTHOPEDICS, INC., Respondent.**

No. WD 49662.

Missouri Court of Appeals, Western District.

June 20, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1995.

Application to Transfer Denied Sept. 19, 1995.

J. Kirk Rahm, Rahm, Rahm, Koenig & McVay, Warrensburg, for appellants.

Kevin O. Murphy, Richard D. Simpson, Jacobson, Maynard, Tuschman & Kalur, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Plaintiffs-appellants Richard O. Rodgers, Ethel J. Stephens, Virginia S. Johnson, Ruth M. Parker, and Richard A. Rodgers ("plaintiffs") appeal a jury verdict for defendants. Plaintiffs contend that the trial court prejudicially erred in denying their motion to strike venireperson Nancy Roberts for cause in light of her admission that she would be reluctant to award damages out of a concern over rising medical care costs. The key issue before this Court is whether plaintiffs can raise this issue on appeal despite the fact that they struck Ms. Roberts from the jury by use of one of their three peremptory challenges, and all 12 jurors who actually sat on the jury were in fact qualified. The answer to this question depends on whether civil litigants have the right to a qualified panel from which to make peremptory strikes.

We hold that such a right, where it exists, is statutory in nature, and that the Missouri statutes do not now afford such a right to civil litigants. The judgment is affirmed.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiffs, the surviving spouse and children of decedent Esther Rodgers, brought a wrongful death action against defendants Truett Swain, M.D., and Jackson County Orthopedics, Inc.[1] Plaintiffs alleged that while acting in the course of his agency for Jackson County Orthopedics, Inc., Dr. Swain negligently performed a lumbar laminectomy which resulted in the death of Esther Rodgers. Defendants denied any negligence.

Jury selection for the trial began on May 23, 1994. Plaintiffs' counsel asked the following question during voir dire:

Q: My question is. Do any of you feel that since this is a medical negligence claim, if you felt the evidence justified a verdict in favor of the Plaintiff, that you would be reluctant or hesitant to so award the Plaintiffs' damages or that you might mitigate the Plaintiffs' damages because you feel this might influence or affect medical costs ultimately in the future and would affect you? Does anybody have that preconceived opinion or claim?

Venireperson Nancy Roberts responded as follows:

Q: [Plaintiffs' Counsel] Yes, Ma'am. Your name?

A: Nancy Roberts.

Q: So, you feel you might have a reservation about being a truly unbiased or impartial a defendant.

---

1. Prior to trial, plaintiffs dismissed Dr. Swain as

tial juror because of the feeling that you have?

A: Uh-huh. (Witness nods head).

Q: [Defendant's Counsel] What was the answer?

Q: [The Court] Yes? No?

A: Yes.

Plaintiffs moved to strike Ms. Roberts for cause on the ground that she would be reluctant or hesitant to award damages because of her preconceived belief that an award of damages would adversely affect her own medical insurance. The trial judge did not conduct any additional voir dire of Ms. Roberts. He simply denied the motion to strike Ms. Roberts for cause. On two other occasions defendant again requested the trial court to strike Ms. Roberts for cause, and on both occasions the trial judge refused to strike her from the jury.

Plaintiffs thereafter exercised their first peremptory challenge to strike Ms. Roberts from the panel, and she did not sit on the jury. After the jury was seated, a bench conference was held at which plaintiffs' counsel attempted to demonstrate that prejudice resulted from the failure to strike Ms. Roberts. He informed the trial court that, had he not had to use one of their peremptory strikes against Ms. Roberts, he would have used that strike to remove venireperson Levi Snow from the jury. Counsel indicated he would have stricken Mr. Snow because he was a corporate manager, he had experience in the juvenile justice and prison systems, his wife was a nurse, and he had vast working experience with medical insurance claims. Counsel believed that, in light of this background, Mr. Snow was likely not to be sympathetic to plaintiffs, and would be reluctant to return a verdict against a medical care provider.

Plaintiffs admitted that Mr. Snow's answers and background did not provide them with a basis for striking Mr. Snow for cause, and they do not contend that Mr. Snow was

unable to follow the trial court's instructions or evaluate the evidence fairly and impartially in rendering a verdict. In fact, Mr. Snow specifically denied that his background would interfere with his ability to be a fair and impartial juror. Rather, plaintiffs claim that they had a right to remove Mr. Snow through use of their final peremptory challenge which, instead, was used to remove Ms. Roberts.

■ After a three-day trial, the jury below returned a verdict for defendants. Only nine of the 12 jurors agreed to this verdict. Mr. Snow was one of these nine jurors. Had one less juror found for defendant, the trial court would have had to declare a mistrial.[2] Plaintiffs allege that the failure to allow them to strike Mr. Snow prejudiced them, and entitles them to remand for a new trial.

## II. THE RIGHT TO A QUALIFIED PANEL FROM WHICH TO EXERCISE PEREMPTORY CHALLENGES

### A. Denial of the Right to 12 Impartial Jurors Requires A New Trial, But In this Case All 12 Jurors Were Qualified.

Plaintiffs argue that the trial court erred in failing to strike Ms. Roberts for cause. They state that the answers she gave during voir dire raised legitimate concerns about her ability to fairly and impartially consider the evidence and follow the trial court's instructions. Yet, the trial judge failed to conduct any independent examination of Ms. Roberts to clarify her views and her ability to serve as a fair and impartial juror prior to denying the motion to strike her for cause.[3]

■ Plaintiffs correctly note that, where a venireperson's answers are equivocal as to his or her qualifications to be a juror, it is incumbent upon the trial judge to question the juror further to either confirm the lack of qualifications to serve, or to rehabilitate the

---

**2.** In a civil case such as this, unanimous verdicts are not required. Rather, 9 of the 12 jurors may agree to a verdict. If less than 9 jurors agree to a verdict, then the case results in a mistrial.

**3.** Plaintiffs properly preserved this point for appellate review by informing the trial court that they would have used their peremptory strike to remove Levi Snow from the jury if Ms. Roberts had been excused for cause.

venireperson. *See* § 494.470, RSMo 1994;[4] *Ray v. Gream,* 860 S.W.2d 325, 332 (Mo. banc 1993); *State v. Ealy,* 624 S.W.2d 490, 493–94 (Mo.App.1981). A failure to do so makes it difficult or impossible for a reviewing court to judge whether the trial court abused its discretion in refusing to strike the venireperson. *Ealy,* 624 S.W.2d at 493–94.

For that reason, *Catlett v. Illinois C.G.R. Co.,* 793 S.W.2d 351 (Mo. banc 1990), said that, "[i]n the absence of an independent examination [by the court] after equivocal responses, the appellate court is justified in conducting a more thorough review of the challenged juror's qualifications." *Id.* at 353. In *Catlett,* the challenged juror went on to sit on the panel, and voted against Mr. Catlett. *Catlett* determined that the juror should have · been excused for cause, and that failure to either strike her or to examine her and rehabilitate her required reversal for a new trial. In so holding, *Catlett* stated:

> Denial by a trial court of a legitimate challenge to excuse a 'partial or prejudiced venireperson ... constitutes reversible error.' (citations omitted). Even in a civil trial, where a jury decision need be made by only a three-fourths majority, the civil litigant is still entitled to a jury of twelve impartial persons. (citations omitted). The competent juror 'must be in a position to enter the jury box disinterested and with an open mind, free from bias or prejudice.'

*Id.* (citations omitted).

■ Ms. Roberts' responses in this case raised legitimate doubts as to her qualifications, and the trial judge should have independently examined her in order to clarify whether she had the ability to sit as a fair and impartial juror. We need not decide, however, whether the concerns raised by Ms. Roberts' answers were so substantial that the failure of the judge to conduct an independent examination of her qualifications would have required reversal if, as in *Catlett,*

Ms. Roberts had in fact sat on the jury itself.[5] We assume for present purposes that this was the case. However, that does not justify reversal in this case.

■ Here, unlike in *Catlett* and most of the other civil cases cited by plaintiffs, the allegedly unqualified juror did *not* sit on the jury. Rather, plaintiffs utilized one of their three peremptory challenges to strike Ms. Roberts from the jury. Because plaintiffs used a peremptory strike to remove the unqualified juror, the fact remains that the 12 jurors who did sit on the jury below were all, indisputably, qualified. While plaintiffs would have used a peremptory strike against Mr. Snow, they have not otherwise shown that they were prejudiced by the fact that Mr. Snow was a member of the jury. The Missouri Supreme Court held in *Carter v. Tom's Truck Repair, Inc.,* 857 S.W.2d 172, 177–78 (Mo. banc 1993), that prejudice is not shown where there is "no claim or suggestion from the record that any of the jurors selected was prejudiced to the extent that he or she should have been removed for cause." *See also White v. Gallion,* 573 S.W.2d 682, 687 (Mo.App.1978) ("In the absence of demonstrated prejudice defendant is not entitled to a reversal of the judgment and a new trial").

Plaintiffs contend that they were nonetheless entitled to a new trial because, in addition to their right to a qualified jury of 12, they had a right to exercise their peremptory challenges from a qualified *panel* of potential jurors. Plaintiffs say that, due to Ms. Roberts' presence on the venire, and the failure to strike her for cause, they were denied the latter right here.

If this were a criminal case, and if it had been tried before an amendment to § 494.480.4 became effective in 1993, we would agree. Until the passage of the latter amendment, a criminal defendant clearly had the right to make his peremptory strikes

---

4. All statutory references are to RSMo 1994 unless otherwise indicated.

5. Even if the jury had been unanimous in returning a verdict for defendant, plaintiffs would be entitled to a new trial *if* one or more of the persons who actually sat on the jury was not qualified. The right to remand does not depend

on a showing that the juror was the deciding vote against plaintiff. However, the fact that the verdict for defendant was by a vote of nine to three emphasizes the effect which the seating of an improper juror would have had in the trial below.

from a *panel* of qualified jurors. If this right were denied due to the erroneous failure to strike an unqualified juror for cause, then defendant was held to be entitled to a new trial.

However, as set forth in more detail below, the right to exercise peremptory challenges from a full panel of qualified jurors is not a constitutional or a common law right; it is solely statutory in origin, and the Missouri statutes historically have limited that right to criminal cases only. A civil litigant does not have a right to a new trial if the trial judge requires him or her to use a peremptory challenge to remove a juror who should have been removed for cause. Therefore, assuming that, in this case, Ms. Roberts was unqualified to serve on the jury, no reversible error occurred, for plaintiffs did not have a statutory right to make their peremptory strikes from a panel consisting solely of qualified jurors.

**B. *The Right to Make Peremptory Challenges From A Panel of Qualified Jurors Is Statutory, and is Not Applicable In Civil Cases.***

The United States Supreme Court held in *Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988), that the right to make peremptory challenges from a venire of qualified jurors is statutory and not constitutional in nature. *Ross* states that peremptory strikes:

> are a means to achieve the end of an impartial jury. *So long as the jury that sits is impartial,* the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment is violated.

*Id.* at 88, 108 S.Ct. at 2278 (emphasis added).

The Missouri Supreme Court has similarly held that the right to peremptory challenges under Missouri law is founded on statute, and is not constitutional in nature. *See, e.g., State v. Gray*, 887 S.W.2d 369, 383 (Mo. banc 1994), *cert. denied*, —— U.S. ——, 115 S.Ct.

1414, 131 L.Ed.2d 299 (1995); *State v. Schnick*, 819 S.W.2d 330, 334 (Mo. banc 1991). Therefore, we look to Missouri statutory law to determine whether civil litigants such as plaintiffs have the right to a panel of qualified jurors from which to exercise their peremptory challenges.

**1. *The Right to a Qualified Venire in Criminal Cases up to 1989.***

Until recently, it was a fundamental precept of Missouri law that a *criminal* defendant must be afforded a full panel of qualified jurors from which to make peremptory challenges. This right was originally discussed in *State v. McCarron*, 51 Mo. 27 (1872), in which the Missouri Supreme Court construed ch. 111, art. VI, § 7, Wagner's Mo.Stat. (1872), which provided:

> There shall be summoned and returned in every *criminal cause*, a number of qualified jurors equal to the number of peremptory challenges, and twelve in addition; and no party shall be required to make peremptory challenges before a panel of such number of competent jurors shall be obtained.

*Id.* at 28 (emphasis added). As is evident, this statute governed the use of peremptory challenges only in *criminal* cases. The Missouri legislature readopted and recodified this statute repeatedly over the succeeding decades until 1989.[6] This statutory provision was repealed in 1989 and replaced by § 494.415, RSMo 1994, which does not contain any provisions requiring a qualified panel.

By 1929 the Missouri legislature had passed a second statute which has also been held to recognize the right of the defendant to a panel of qualified jurors from which to make peremptory strikes. It stated:

> In all criminal cases, a list of the jurors *found by the court to be qualified to sit in the case* shall be forthwith delivered by the clerk of the court to the attorney for the state who shall thereupon and within such

---

6. *See* § 2622, RSMo 1899 (same); § 5226, RSMo 1909 (same); § 4020, RSMo 1919 (same); § 3677, RSMo 1929 (same); § 4066, RSMo 1939 (same); § 546.210, RSMo 1986 ("There shall be summoned and returned in every criminal cause, a number of qualified jurors equal to the number of peremptory challenges, and twelve in addition; and no party shall be required to make peremptory challenges before a panel of such number of competent jurors shall be obtained").

time as may be directed by the court, announce or indicate the challenges for the state. The jury list, with the state's challenges indicated thereon, shall then be forthwith delivered to the defendant or his attorney, who shall thereupon announce or indicate his challenges and return the list into court within such time as may be ordered by the court, and the remaining twelve ... shall be the jury to try the cause.

§ 3676, RSMo 1929 (emphasis added).[7] While this statute was also revised and recodified over the years, the language addressing use of peremptory challenges in criminal cases remained very similar or identical until 1989.[8] *Accord State v. Plummer,* 860 S.W.2d 340, 347 (Mo.App.1993) (explaining the evolution of right to peremptory challenges in criminal cases). In 1989 it was repealed and recodified as § 494.480, RSMo 1989, as will be discussed further below.

### 2. The Right to a Qualified Venire in Civil Cases up to 1989

Over the years a few Missouri courts, in *dicta,* have erroneously assumed that *civil* litigants have a similar statutory right to make their peremptory strikes from a venire of qualified jurors.[9] And indeed, they would have been correct at least as late as 1872, when one of the Missouri statutes governing the right to peremptory challenges in civil cases paralleled the 1872 statute quoted above governing peremptory challenges in criminal cases. Section 24, entitled "Per-

emptory Challenges Not to be Made Until When", provided:

§ 24. No party shall be required to make peremptory challenges, before a panel of competent jurors, equal to the number of peremptory challenges of both parties, and twelve in addition shall be obtained.

Ch. 80, § 24, Wagner's Mo. Stat. (1872).

However, this statute was not readopted in 1879.[10] From that time, and for the next 110 years, the civil and criminal statutes governing the right to peremptory challenges remained separate, and the governing civil statute never again provided that a civil litigant had a right to make peremptory challenges from a venire containing only qualified jurors. For example, the 1986 statute provided:

1. In trials of civil causes, each party shall be entitled to challenge, peremptorily, three jurors.

2. The plaintiff shall, in all cases, announce his challenges first.

3. In a trial when there are multiple plaintiffs or defendants they shall join in their challenge unless one of them objects. The court in its discretion may allocate the allowable peremptory challenges among the parties plaintiff or defendant upon good cause shown and the ends of justice require.

§ 494.200, RSMo 1986. This language is a reenactment, with little significant variation, of the intervening civil statutes governing the

---

7. Prior to 1929, this provision stated that "[i]n all criminal trials the state shall be entitled to the following number of peremptory challenges ...", and listed the number of challenges the parties were entitled to. § 4019, RSMo 1919. It did not state that the panel must be qualified.

8. *See* § 4065, RSMo 1939 (same); § 546.200, RSMo 1949 (same); joined in 1978 with another provision in § 546.180.3, RSMo 1986; repealed in 1989 and replaced with § 494.480, RSMo 1989.

9. *See, e.g., Holtgrave v. Hoffman,* 716 S.W.2d 332, 335 (Mo.App.1986); *Golden v. Chipman,* 536 S.W.2d 761, 763 (Mo.App.1976); *Butler v. Talge,* 516 S.W.2d 824, 829 (Mo.App.1974). Significantly, in each of these cases the challenged venireperson actually served on the jury. In the

course of discussing the law, the courts quoted the general rule in criminal cases that one is entitled to a qualified venire from which to make peremptory challenges. However, the only support offered for this *dicta* was a citation to criminal cases. As noted above, the right to a qualified venire in criminal cases depends on statutes which apply only in criminal cases. Thus, to the extent that the above cases suggest in *dicta* that there is a right to a qualified venire in civil cases, they should not be followed.

10. Apparently, section 24 was replaced with § 2797, RSMo 1879, which provided that:

All courts, other than those heretofore named, in which juries may be required for the trial of any cause, may order the sheriff ... to summons a sufficient number of jurors, as occasion may require.

right to peremptory challenges in civil cases.[11]

### 3. *The Right to a Qualified Venire Today*

In 1989 the Legislature repealed both of the statutes governing the right to peremptory challenges in criminal cases, and the single remaining statute governing peremptory challenges in civil cases. The civil statute and the second criminal statute were readopted as a single statute, § 494.480, RSMo 1989.[12] However, even under the revised statute, civil litigants were not provided the right to a qualified panel. *See* § 494.480.1. Rather, the right was again accorded only to parties in criminal actions. As adopted in 1989, section 494.480.1, as to civil cases, stated in relevant part:

1. In trials of civil causes each party shall be entitled to peremptorily challenge three jurors. When there are multiple plaintiffs or defendants, all plaintiffs and all defendants shall join in their challenges as if there were one plaintiff and one defendant
. . .

With respect to criminal cases, section 494.480.4 stated:

4. Within such time as may be ordered by the court and from the list of jurors *found by the court qualified to serve in the case, the state shall announce its peremptory challenges first and the defendants* thereafter.

§ 494.480.4, RSMo 1989 (emphasis added).

This statute remains the same in all relevant respects today in regard to civil cases. A key change was made in regard to criminal cases in 1993, however. At that time the Legislature amended section 494.480.4 and *deleted* the words providing that peremptory strikes must be made "from the list of jurors *found by the court qualified to serve* in the

case" (emphasis added). The Legislature replaced this language with the following provision:

The qualifications of a juror on the panel from which peremptory challenges by the defense are made shall not constitute a ground for the granting of a motion for a new trial or the reversal of a conviction or sentence unless such juror served upon the jury at the defendant's trial and participated in the verdict rendered against the defendant.

§ 494.480.4, RSMo 1994.

■ In sum, as of 1993, the mere fact that a litigant, civil or criminal, was erroneously required to use a peremptory strike to remove a juror who should have been stricken for cause does not require grant of a new trial, so long as all 12 jurors who in fact sat on the jury were qualified.

Inasmuch as Ms. Roberts was struck from the venire by means of a peremptory challenge, and because the 12 jurors who did sit on the jury were all qualified, plaintiffs therefore have failed to show reversible error based on the fact that they had to use a peremptory challenge to remove Ms. Roberts from the venire.

For the reasons stated above, the judgment is affirmed.

All concur.

---

11. Prior to 1986, the relevant statutes generally stated that:

> In trials of civil causes each party shall be entitled to challenge, peremptorily, three jurors; but when there are several plaintiffs and defendants they shall join in their challenges, and the plaintiff shall, in all cases, announce his challenges first.

§ 720, RSMo 1939. *See, e.g.,* § 8769, RSMo 1929; § 6630, RSMo 1919; § 7281, RSMo 1909; § 3783, RSMo 1899; § 6081, RSMo 1889; ch. 80, § 21, Wagner's Mo. Stat. (1872).

12. The other statute, which originally was ch. 111, art. VI, § 7, Wagner's Mo. Stat. (1872), as explained above, was readopted as section 494.415, RSMo 1993, but without any provision regarding peremptory challenges.